IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

THERESA BEAT, EXECUTOR,
ESTATE OF DARREL DEAN DYCHE,
Plaintiff,

vs. Case No. 08-1267-JTM

THE UNITED STATES OF AMERICA,
Defendant.

MEMORANDUM AND ORDER

Following a trial in which the jury found that for the plaintiff Theresa Beat, as executor for the Estate of Dale Dyche, on her tax refund claim, this matter came before court on a hearing on all remaining issues in the case. Specifically, the government contests the plaintiff's application for attorney fees and refund for other estate expenses. The court has previously granted to the Estate partial summary judgment regarding deductions for administrative expenses pursuant to 26 U.S.C. § 2053(a)(2) for executor's commissions in the amount of $40,000.00, accounting fees in the amount of $11,060.00 and interest payments in the amount of $755,660.00. (Dkt. 88).

**Findings of Fact**

1. Theresa Beat is the Executor and sole beneficiary of the Estate of Darrel Dean Dyche.

2. Darrel Dean Dyche died July 14, 2001.

3. In August 2001, Beat, as Executor of the Dyche Estate, opened a probate case in Kingman County, Kansas captioned, *In the Matter of the Estate of Darrel Dean Dyche*, Case No. 01 P 38. See Jury Instruction No. 15 (Stipulated Facts).

4. The Dyche Estate was valued at approximately $4,000,000, with approximately (1) $2.4 million in real estate; (2) $6,700 in furniture/household goods/wearing apparel, (3) $387,908.88 in stocks and bonds, and (4) $1.3 million in personal property. Of the $1.3 million in personal property approximately $80,000 was cash or cash equivalents, the rest was farming equipment or grain. See Ex. 12, Amended Inventory and Valuation; Trial Ex. # 538.

5. In 2001, 2002, and 2003, the Dyche Estate distributed all of its property to Beat, except for the $387,908.88 in stocks and bonds. The Probate Court approved these distributions. See Ex. 12, Amended Inventory and Valuation, See Ex. 2, Probate Orders.

6. Because the Dyche Estate distributed real property and farming equipment to Ms. Beat, she must report the income earned from the property, including federal farm subsidies and grain sales, on her individual income tax returns (Form 1040). Additionally, she must report on her individual income tax returns any expense deductions associated with her ownership of the property.

7. On December 18, 2001 and June 27, 2002, Theresa Beat signed a document titled "Receipt and Refunding Agreement." Among other things, the document noted that Ms. Beat had that day received real and personal property from the Estate and stated: "In consideration of this distribution at this time I agree to refund any portion of the distribution made to me that may be required by the Court because of any additional assessment of estate, inheritance, gift or income taxes by the federal or state government...." See Exhibit 20.

8. By mid-2005, the Dyche Estate had sold the majority of its stocks and bonds. As of December 31, 2010, the Dyche Estate has securities and cash with an approximate value of $188,976. See Ex. 13, Dyche Tax Returns; Ex. 23, Oppenheimer Account Statements.

9. On or about April 8, 2002, Theresa Beat timely filed Form 706 United States (and Generation-Skipping Transfer) Tax Return claiming a marital deduction and showing no tax being due. See Trial Exhibit # 538.

10. In conjunction with the IRS's investigation of the Form 706, the IRS issued summonses to potential third-party witnesses. Theresa Beat contested some of these summonses in Federal Court. See *Beat v. United States*, Case No., 6:04-01062-WEB (D. Kan.); *Beat v. United States*, Case No.: 6:05-1008-MLB (D. Kan.); *Beat v. United States*, Case No., 6:05-1057-MLB (D. Kan) (collectively " the Summons Actions").

11. On March 8, 2005, Theresa Beat filed a claim for declaratory judgment to have the Kingman County Court declare that she and Dean Dyche had a common law marriage. This case was captioned *In re the Marriage of Dean Dyche and Theresa*, Case No. 2005-CV-13 ("the State Court Action"). See Ex. 14, State Court Petition.

12. On or about March 17, 2005, the Internal Revenue Service denied the marital deduction sought on the claim and assessed additional estate tax in the amount of $1,429,724.00, a civil fraud penalty in the amount of $1,072,293.00 under IRC §6663 and interest on the tax and penalty in the amount of $434,697.34. See Doc. 1-3; Jury Instruction # 15 (Stipulated Facts).

13. On June 10, 2005, the Dyche Estate paid to the IRS, the assessment of additional tax, penalty and interest in the amount of $2,936,714.34. See Doc. 65-42; Jury Instruction # 15 (Stipulated Facts).

14. On or about May 31, 2007, a Form 843 Claim for Refund and Request for Abatement was filed by the Dyche Estate to claim a refund of estate taxes, penalties, and interest paid by it in the amount of $2,934,301.77, plus it sought additional deductions for legal fees, accounting fees, executor fees, and interest expenses. The Dyche Estate sought a refund totaling the amount it paid on June 10, 2005, less $2,412.51 of an interest reduction already refunded by the IRS. See Doc. 1-4; Jury Instruction # 15 (Stipulated Facts).

15. On June 11, 2007, the Dyche Estate filed a supplemental Form 843 Claim for Refund and Request for Abatement with Internal Revenue Service Center in Cincinnati, Ohio. See Doc. 1-5; Jury Instruction # 15 (Stipulated Facts).

16. On August 4, 2008, the United States issued a Notice of Disallowance of the claim for Refund pursuant to 26 U.S.C. § § 6532. See Doc. 1-6; Jury Instruction # 15 (Stipulated Facts).

**The Federal Refund Suit**

17. Beat, as Executor of the Estate, subsequently filed the current lawsuit seeking a refund of $2,934,301.77 in taxes, penalties and interest paid to the United States Treasury (the "Federal Action). See Doc. 1.

18. In the current lawsuit, Plaintiff claimed the Estate was entitled to a refund because: (a) it owed no taxes because Beat and Dyche had a common law marriage at the time of Dyche's death and as such the Estate is entitled to claim the marital deduction; (b) the Estate is not responsible for any penalties in this case because it did not act fraudulently or negligently and it relied on the advice of its counsel, Bever Dye, in completing the Estate Tax return 706, (c) the Estate is entitled to claim deductions for legal fees, accounting fees, executor's commissions and interest expenses incurred

by the Estate, and (d) the United States included in the value of the decedent's gross estate the value of a mineral interest that was not owned by the decedent at the date of death. Id.

19. The United States answered Plaintiff's complaint and denied that the Dyche Estate was entitled to a refund. See Docs. 12, 34.

20. The Court granted partial summary judgment in favor of the United States, holding that under the duty of consistency the Estate could not claim the marital deduction. See Doc. 88.

21. The case was ultimately tried to a jury on the issue of whether the United States properly imposed penalties for fraud or negligence under the Internal Revenue Code.

22. On November 3, 2010, the jury returned a verdict in favor of Plaintiff setting aside the penalties imposed by the IRS, finding that Plaintiff proved by a preponderance of the evidence that she had reasonable cause and acted in good faith by relying on her attorneys' advice in claiming the marital deduction on the Estate Tax Return. See Doc. 157.

**Executor's Commissions**

23. On October 20, 2010, the Dyche Estate wrote a check to Theresa Beat for an executor's commission in the amount of $40,000.00. See Exhibit 1.

24. The Estate's payment of Ms. Beat's executor's commission of $40,000.00 was approved by Order of the Probate Court of Kingman County, Kansas on November 15, 2006. See Exhibit 2.

25. This Court previously granted partial summary judgment to the Estate ordering that the Estate may deduct executor's commissions "in the requested amounts," which in the case of executor's commission was $40,000.00. See Doc. 88, p. 48, Doc. 68, p. 3.

26. Mr. Dyche's Last Will and Testament does not authorize (or otherwise provide for) the

payment of executor's commissions. See Trial Exhibit 62.

**Accounting Fees**

27. The Estate paid Daryl L. Blick, CPA fees for professional accounting services for preparation of Estate income tax returns and other related professional services in the total amount of $13,575 from April of 2002 through March of 2010. See Exhibit 3, p. 1; Exhibit 4.

28. Of the $13,575.00 in accounting fees paid by the Estate to Daryl Blick, the Probate Court of Kingman County, Kansas has approved the payment of $12,705.00. See Exhibit 2.

29. This Court previously granted partial summary judgment to the Estate ordering that the Estate may deduct accountants' fees "in the requested amounts," which at the time of the filing of Plaintiffs' motion for partial summary judgment was $11,060.00 See Doc. 88, p. 48, Doc. 68, p. 3.

30. The Estate has previously deducted $4,625 of these accounting fees on its Form 1041 for tax years 2001, 2002, and 2003. See Ex. 13, Estate Tax Returns.

**Interest Expenses**

31. The Estate paid $2,934,301.77 in tax, penalties and interest to the United States Treasury on or about June 10, 2005.

32. In order to have the necessary funds to pay the tax, penalties and interest to the United States Treasury, on or about June 10, 2005, Theresa Beat loaned the Dyche Estate $2,936,714.34. See Ex. 15, Loan Between Beat and Estate.

33. To date, the Estate has not made any interest payments to Theresa Beat.

34. Also on June 10, 2005, Theresa Beat obtained a personal loan with the First National

Bank of Hutchinson in the amount of $2.9 million. See Ex. 16, First National Bank Loan Docs.

35. During the years 2005 through 2009, Beat paid interest on her loan with First National Bank in the amount of $879,959.12. See Exhibit 6.

36. In 2008, Theresa Beat split her loan in an attempt to separate her interest expenses relating to the farm operation. See Ex. 17, First National Bank Letter.

37. On January 10, 2011, Beat paid $93,995.76 for the most recent interest payment on the First National Bank loans. See Exhibit 6.

38. As of January 10, 2011, Beat has made interest payments totaling $1,135,473.90 on the loans made to her by First National Bank of Hutchinson. See Exhibit 6.

39. The First National Bank loan will continue to accrue interest at a rate of $437.30 per day until it is paid in full. From the time of the last interest payment to the date of the scheduled hearing in this case, February 25, 2011, an additional $20,134.20 in interest will accrue on the loans in addition to the $1,135,473.90 in previously paid interest.

40. The Estate has made the following additional interest payments: · $247,020.00 of interest to the United States Treasury on the Federal estate tax assessment; and · $185,265.00 of interest to the United States Treasury on the portion of the payment allocated to the fraud penalty.

41. Theresa Beat, in conjunction with a Settlement Agreement, paid the Kansas Department of Revenue $368,547.27 "to settle any and all assessed tax penalties, interest and refunds" arising out of the Dean Dyche estate. See Exhibit 22, State Settlement. This settlement included an interest payment totaling $62,934.00.

42. This Court previously granted partial summary judgment to the Estate ordering that the Estate may deduct interest expenses "in the requested amounts," which at the time of filing of

Plaintiff's motion for partial summary judgment was $755,660.00 and included interest on the First National Bank loan paid or accrued through June 10, 2007 totaling $507,431, interest paid in the amount of $62,294 to the Kansas Estate Tax Assessment, and interest paid in the amount of $185,265 on the fraud penalty. See Doc. 88, p. 48, Doc. 68, p. 3.

43. Unless this Court or an appellate court upsets or otherwise overturns the jury verdict, the Dyche Estate will receive a full refund of the $185,265 it paid in interest on the fraud penalty.

**Attorney's Fees**

44. The Dyche Estate or Theresa Beat employed four law firms to perform legal work after the date of Dean Dyche's death: Hurth, Yeager, Sisk & Blakemore, LLP of Boulder Colorado ("Hurth"), Bever Dye, LC of Wichita, Kansas ("Bever Dye"), Grace, Unruh & Pratt, L.C./Law Offices of Brian G. Grace of Wichita, Kansas ("Grace") and Morris, Laing, Evans, Brock & Kennedy, Chtd. of Wichita, Kansas ("Morris Laing").

45. The Estate employed Hurth to perform miscellaneous legal work for the Estate in Colorado in 2002. During this time, the Estate paid Hurth $3,257.56. The Dyche Estate deducted the $3,257.56 on its 2001 income tax return (Form 1041). See Ex 13, Dyche Tax Returns.

46. The Estate hired Bever Dye to advise and represent Ms. Beat with respect to the administration of the estate and the preparation of the death tax returns. See Ex. 18, Cobb Engagement Letter.

47. As of November 9, 2010, the Dyche Estate's legal fees from the Bever Dye firm totaled $202,816.25 for professional services incurred between November 2001 and November 2010. Beat has paid Bever Dye $86,701.38 with checks from her personal accounts. The remaining $116,114.87

was paid with checks drawn from the Dyche Estate's account. See Exhibit 3, p. 2, Exhibit 7; Ex. 19, Summary Chart.

48. The Dyche Estate has deducted $43,588 of Cobb's fees from its 2001, 2002, and 2003 tax returns. See Ex. 13, Dyche Income Tax Returns.

49. The Estate or Theresa Beat hired Grace to pursue the State Court Action and the Summons Enforcement Actions.

50. On October 6, 2006, the Kingman County Court granted summary judgment against Theresa Beat in the State Court Action, holding that she and Dyche did not have a common law marriage. See Doc. 65-44.

51. Soon thereafter, Theresa Beat or the Dyche Estate terminated her engagement of Grace for professional legal services. During the period Grace represented Beat or the Dyche Estate, Beat, with checks drawn from her personal account, paid Grace $96,997.17 for fees and expenses incurred in pursuit of the State Court Action. Grace was paid an additional $265,250.92 for fees and expenses incurred in pursuit of the State Court and Summons Enforcement Actions with checks drawn on the Dyche Estate's account. In total, Grace received $362,248.09. See Exhibit 3, p. 3– 4; Exhibit 8; Ex. 19, Summary Chart.

52. Beginning approximately in November of 2006, Theresa Beat or the Dyche Estate engaged Morris Laing to appeal the ruling from the Kingman County Court in the State Court Action, and to pursue other necessary litigation, including the current case.

53. On August 8, 2008, the Kansas Court of Appeals reversed the ruling of the Kingman County Court in the State Court Action granting summary judgment against Beat, and remanded the case for further proceedings. *In re Marriage of Dyche and Beat v. Kansas Department of Revenue,*

*et al.*, No. 97,639, 2008 WL 3367565, 189 P.3d 580 (Kan. Ct. App., Aug. 8, 2008).

54. On September 3, 2008, Beat, as Executor of the Estate, filed the current case in the Federal District Court for the District of Kansas. See Doc. 1.

55. On March 10, 2009, the Kingman County Court entered an order granting reconsideration of a prior court order and granting Beat's motion to dismiss her case in the State Court Action without prejudice.

56. There was extensive discovery taken in the State Court Action, including over 40 depositions. The parties agreed that any depositions taken in the State Court Action or any documents produced in the State Court Action could be used in the current case. See Dkt. # 36, Scheduling Order.

57. Morris Laing has represented Beat or the Dyche Estate throughout the current lawsuit, including at trial, and continues to represent Beat for the purposes of obtaining a final judgment in this case.

58. Theresa Beat, with checks drawn from her personal account, has paid Morris Laing $146,641.66 for fees and expenses related to professional services rendered in the State Court Action. See Exhibit 3, p. 5–7, Exhibit 10; Ex. 19, Summary Chart.

59. As of December 31, 2010, Theresa Beat, with checks drawn from her personal account, has paid Morris Laing $42,239.68 for fees and expenses related to professional services rendered in the Federal Court Action. Morris Laing was paid the remaining $359,032.63 for fees and expenses related to professional services rendered in the Federal Court Action with checks drawn from the Dyche Estate's account. Id. Morris Laing received an additional $2,044.25 from an unknown source. In total, Morris Laing received $549,958.22 for professional services related to the State Court and

Federal Court Actions.

60. The probate court in Kingman County has approved the payment of all of the above attorneys' fees. *See* Exhibit 2.

**Real Estate**

61. The IRS increased the value of the gross estate by $20,475.00, which the IRS contended was the fair market value at the time of Dyche's death of a .00609240 royalty interest in Section 11, Township 26, Range 5 in Reno County, Kansas, which the IRS contends was owned by Dyche at the time he died. *See* Doc. 1-3, p. 6.

62. Dyche did not own any interest in Section 11, Township 26, Range 5 W in Reno County, Kansas at the time of his death.

63. Dyche owned a .006049240 royalty interest in Section 16, Township 26, Range 9 in Reno County, Kansas.

64. The value of Dyche's royalty interest Section 16, Township 26, Range 9 in Reno County, Kansas was reported as part of the overall value of the Southeast Quarter of Section 16, Township 26, Range 5 in Reno County.

***Conclusions of Law***

Under IRC § 2053, estate expenses are deductible where they are allowable under the relevant jurisdiction. Under 26 C.F.R. § 20.2053(a), administrative expenses of an estate are deductible if they are "actually and necessarily incurred in the administration of the decedent's estate." The plaintiff Estate has the burden of showing that the expenses it seeks to recover are

proper deductions. *Estate of O'Neal v. United States*, 258 F.3d 1265, 1276 (11th Cir. 2001).

The government acknowledges that the court has previously approved deductions for interest, accounting fees, and an executors commission.[1] It also acknowledges that it did not raise any objections to those deductions in its response to Beat's motion for summary judgment. (Dkt. 169, at 4). However, it argues in its Supplemental Brief that this ruling in the summary judgment decision is not the law of the case, as that doctrine applies only following the entry of final judgment.

The government contends that the court should consider the issue anew. It contends that the ruling is not binding because "the facts have changed," and because it has conducted "additional research and review," leading it to conclude that the Estate is not entitled to all of the deductions sought. Of these supposed changed facts, it cites "[f]or instance," the prior determination that the Estate is entitled to deduct interest on the fraud penalty, that in light of the jury's decision rejecting the fraud penalty, "both parties now agree that because the amount will be refunded, it is no longer deductible, and, to that end, Beat no longer seeks to deduct that amount." (*Id*. at 5).

The court hereby denies the government's argument, both procedurally, and on the merits. The government is correct that the law of the case doctrine only applies to final judgments. *Echo Acceptance Corp. v. Household Retail Serv., Inc.*, 267 F.3d 1068, 1079 (10th Cir.2001) (citing *United States v. Smelting Refining & Min. Co.*, 339 U.S. 186, 199 (1950)). Under the "law of the case" doctrine, decisions by a court as to a rule of law will be held to "continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). "The

---

[1] The court's Order approved $755,660 in interest expenses ($507,431 paid by Beat to the First National Bank, $62,294 paid to the Kansas Department of Revenue, and $185,265 paid to the IRS on the fraud penalty), accounting fees of $11,060 and an executor commission of $40,000.

doctrine is considered only a rule of practice and is not a limit on a court's power or authority" to address an issue. *Wilson v. Meeks*, 98 F.3d 1247, 1250 (10th Cir. 1996), *qualified on other gds., Ensminger v. Terminex Internat'l*, 102 F.3d 1571 (10th Cir. 1996). A ruling disposing of only some of the claims in an action may be "revised at any time before the entry of a judgment." Fed.R.Civ.Pr. 54(b). Even if a final judgment has been entered, and the doctrine is applicable, the doctrine is discretionary and must be flexibly applied to serve the interests of justice. *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 823 (10th Cir.2007).

Nevertheless, the absence of a final judgment does not mean that the court's earlier ruling — and the government's explicit failure to object to the Estate's requested deductions — is somehow a nullity. The government's argument is an interlocutory request directed at the court's general discretion to review its rulings prior to final judgment. *Wagoner v. Wagoner*, 938 F.2d 1120, 1122 n. 1 (10th Cir. 1991). Even though the standards for relief under Rules 59(e) and 60(b) are not binding on the court, given the interlocutory nature of the court's ruling, those standards supply informative guidance on the issue of whether to allow reconsideration. *Doctor John's, Inc. v. City of Sioux City*, 456 F.Supp.2d 1074 (N.D. Iowa, 2006). *See also Renfro v. City of Emporia*, 732 F.Supp. 1116, 1117 (D. Kan. 1990) (reconsideration of summary judgment ruling should be granted only in limited circumstances, analogous to those governing a motion to alter or amend a judgment).

The government offers no valid reason for simply dismissing its earlier lack of opposition to the deductions sought by the Estate. The government's reliance on the example of the fraud penalty interest is misplaced, because this represents the intervening effect of the jury's verdict on the fraud count. That verdict was foreseeable at the time of the summary judgment and the court's ruling, and the ruling was thus contingent *as to that deduction.* But the government otherwise has

pointed to no unforeseeable, intervening change in the circumstances of the case which would justify its repudiation of its prior acquiescence in the deductions sought by the Estate, nor any new evidence which was not previously discoverable.

The record of the case shows that the government has never suggested that administrative and interest expenses would not be recoverable. In its 2008 response to the Estate's refund claim, the IRS responded: "Interest expenses will be allowed when a final resolution is reached in this matter." (Dkt. 1-5, at 4). In the Pretrial Order, the plaintiff explicitly stated that it sought to recover deductions for accounting, executor, and interest expenses. (Dkt. 61, at 9). The government presented no contention in the Pretrial Order that such expenses were not recoverable.

In its motion for summary judgment, the Estate explicitly stated a claim for interest expenses. The government responded that it "does not object to the Dyche Estate deducting administrative expenses for the executor's commission, accounting fees, and interest fees arising from the funds used to pay the tax." (Dkt. 69, at 6). The government further stated:

> The United States, generally speaking, does not object to the Dyche Estate deducting administrative expenses for the executor's commission, accounting fees, interest fees *arising from the loan obtained to pay the estate tax*, and those attorneys' fees actually and necessarily incurred for the estate.

*Id*. at 1 (emphasis added).

In response to the Estate's motion requesting an award of expenses, the government objected only as to *future* fees, that it could not agree the request "to the extent that Beat's motion can be interpreted as an attempt to obtain a blanket deduction for all *future expenses not yet incurred* without giving the United States a chance to review those fees." (Dkt. 69 at 3). Similarly, it stated that any final agreement as to the amount would be "possible upon the conclusion of litigation

because until that time, the facts of the case [as to the penalties imposed] have not been determined and Beat's attorneys' fees continue to accrue." *Id*. at 4.

Further, the government lodged no objection in principle to the projected size of the Estate's requested attorney fees, or the inclusion of fees for the state proceedings. Instead, it stated with respect to the projected $ 1 million in attorney fees that "[*i]f the jury determines that the I.R.C. § 6663 fraud penalty is appropriate due to Beat's fraudulent intent*, Beat would be hard pressed to justify attorneys' fees that she has estimated to be nearly 1/3 of the total value of a multi-million dollar estate as 'reasonable.'" *Id*. at 5 (emphasis added).

In its ruling, the court stated:

> The plaintiff has filed a separate motion for summary judgment, seeking an award of expenses incurred by the Estate in connection with administrative expenses. Specifically, the plaintiff seeks designated amounts incurred for executor, accounting, interest, and attorney fees. *The government does not oppose plaintiff's motion, with one exception*. The government objects to an award of attorneys fees *at the present time* because some of the attorneys fees cited in plaintiff's motion have not been actually incurred and because a potential finding of fraud by the plaintiff would be relevant to the court's discretion in calculating the award of attorneys fees.

(Dkt. 88, at 46) (emphasis added)

The court's ruling was thus not a finding that was rendered over the government's objection, and in response to which it is now supplying additional evidence or argument. Rather, the court's ruling was the product of the government's concessions which are binding judicial admissions, which cannot be repudiated at will. *Guidry v. Sheet Metal Workers Intern. Ass'n*, 10 F.3d 700, 716 (10th Cir. 1993). Such a repudiation certainly may not be done so for the first time, after discovery, after trial — and an adverse verdict —, merely on the grounds that the government has conducted some additional research.

Statements in briefs "may be considered admissions at the court's discretion." *Guidry v. Sheet Metal Workers Int'l Assoc*., 10 F.3d 700, 716 (10th Cir.1993). *See also U.S. Energy Corp. v. Nukem, Inc*., 400 F.3d 822, 833 n. 4 (10th Cir. 2005). Relevant to this determination are the time which counsel had to fully consider the import and effect of such statements, see *Guidry*, 10 F.3d at 716 (finding statement at oral argument not a judicial admission because it was "not sufficiently deliberate"), and the party's explanation for its prior, ostensible admission. *See Bakersfield Westar Ambulance, Inc. v. Community First Bank*, 123 F.3d 1243, 1248 (9th Cir.1997) (citing *Sicor Ltd. v. Cetus Corp*., 51 F.3d 848, 859-60 (9th Cir.1988).

Here, government had ample opportunity to consider the effect of its statements and, if need be, to qualify them. It made such qualifications only in a very specific and limited manner. Further the statements occurred not during oral argument or in the course of some tangential brief following judgment, but during summary judgment briefing at a pivotal moment in the case, that is, when the opportunity for patient reflection and considered judgment is substantial and essential. Further, the consequence of such representations was not insubstantial, as the government's position effectively deprived the plaintiff of the ability to present evidence relevant to the deductions to the jury. Finally, the government's explanation — an entirely unspecific reference to facts having changed and a statement that it has done some more research — fails to account at all for its earlier statements, and the court has no difficulty in holding the government to its word.

Even if the court were to consider the issues presented entirely *de novo*, the court would still reject the government's argument and find that the deductions sought by the Estate are reasonable, necessary, and proper.

As to the deductions in question, the government argues that the Estate can only claim

expenses directly incurred by it, not those incurred by Theresa Beat. It also argues that the Estate essentially bankrupted itself when it distributed almost all of its assets to Beat, and that the First National Bank's loan to Beat "was personal to her and included funds for her farming operation." It questions the validity of the loan, given the lack of interest payments to Beat, further noting that Beat has apparently not (yet) demanded repayment, and there is no formal schedule for repayment. (Dkt. 169, at 9-10). It contends that the interest expenses were not necessarily incurred for the benefit of the Estate, but were used to maintain the Beat farming operation. In this context, it stresses that "had the Dyche Estate refrained from divesting most of its property in 2001, 2002, and 2003 or reclaimed that property in 2005, there may have been sufficient liquidity in the estate to pay all (or some) of the estate tax, penalties, and interest without resort to borrowing, and states that the Estate "should not benefit from the illiquidity that it unnecessarily caused through an asset transfer that was financially beneficial to Beat only." (*Id*. at 12). Additionally, it contends that the attorney fees are "duplicative, unreasonable, and excessive." *Id*. at 13. Finally, it argues that the court should deny any request for deductions where the evidence shows that the Estate has already received a deduction for a given expenditure.

Even were the court to allow the government to raise these issues now, it would find the requested deductions reasonable and necessary. Given the nature of the property held by the Estate (largely farmland which could not be easily liquidated to pay the assessed taxes and penalties), the procedure by which the property was divested and the loan undertaken by Beat were necessary and beneficial to the Estate. The Refund Agreement shown in Exhibit 20 is a common instrument in Kansas probate practice. The close correspondence in the amount and timing of the loan undertaken by Beat, matched to her payment to the Estate, and the Estate's subsequent payment of the assessed

taxes and penalties, satisfy the plaintiff's burden to shown that the interest expenses were reasonable, necessary, and beneficial to the Estate. Those expenses are therefore deductible under 26 C.F.R. § 20-2053.3(a).

Notwithstanding the government's arguments, the distribution to Beat was contingent upon her explicit agreement to refund any amounts due for assessed taxes. As a result, both the Estate and Beat were liable on the taxes assessed by the IRS. The government's attempt to somehow distinguish the distribution as solely to the benefit of Beat is without merit. The distribution, coupled with the express obligation to compensate the Estate for any assessed taxes, rendered the arrangement mutually beneficial to both parties.

Similarly, the court approves the requested attorney fees. As noted, the government challenges the fees as excessive, but fails to do so in anything other than a conclusory manner. The present case was fact-intensive, involved a large estate, generated litigation in multiple venues, and involved serious charges — in addition to the large tax assessed — of fraud and negligent misconduct. Given the nature of the case and the charges involved, a substantial expenditure on attorney fees by the Estate was natural and defensible. Nor is there a logical point of separation between the litigation advanced by Beat rather than the Estate, or between the state and federal actions. All of the litigation was closely tied to the same set of operative facts, and discovery in one venue helped clarify the issues in the other. Accordingly, the court approves the requested attorney fees, including the January and February fees as set forth in Exhibits 25 and 27 respectively.

At the hearing on the present matter, counsel for the government suggested that the total fees requested are excessive, and suggested that the court should reduce the total fee by 25%, on the grounds that "[f]ees have to be reasonable for the amount that's at stake in the case." (Tr. at 61).

Reviewing all of the circumstances of the case, the amount in controversy, the complexity of the issues involved, the results obtained, the care and skill of counsel, and comparable professional charges, the court is satisfied that plaintiff's total fee request is reasonable.

The remaining issues involve the so-called double deductions, and the real estate tax. According to the Estate's submission, the parties essentially agree on these issues. Even though there may be double deductions in some instances, procedurally under IRS Return Form 706, the correct approach is to allow the (double) deduction, and the government then employs equitable recoupment to increase the tax due. Similarly, with respect to the real estate, the Estate states that the government agrees that the taxable estate should be reduced by $20,475.

IT IS ACCORDINGLY ORDERED this 11th day of April, 2011, that the court grants plaintiff recovery for administrative and other expenses as specified in her Supplemental Memorandum (Dkt. 170) and as provided herein.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE